IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS RINK,                              :
                                          :
              Plaintiff,                   :
                                          :
    v.                                     :         3:14-CV-02154
                                          :         (Judge Mariani)
NORTHEASTERN EDUCATIONAL                   :
INTERMEDIATE UNIT 19, et al.,              :
                                          :
              Defendants.                  :

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is a Motion to Dismiss Plaintiff's Complaint for Failure to

State a Claim (Doc. 19). For the reasons that follow, the Court will grant the Motion in part

and deny it in part.

### II.   Factual Allegations and Procedural History

Plaintiff's Complaint alleges the following well-pleaded facts, which are accepted as

true for purposes of resolving the instant Motion.

Defendant Northeastern Educational Intermediate Unit 19 ("NEIU") is

part of the public school system in the Commonwealth of Pennsylvania and
provides statutorily mandated educational services, such as the delivery of
early intervention programs and services, special education programs,
learning support, and life skills, to school districts in Lackawanna, Wayne,
Wyoming, Pike and Susquehanna County that cannot provide these
specialized services themselves.

(Compl., Doc. 1, at ¶ 10.) Plaintiff Thomas Rink began working at NEIU in 1981 and "was promoted several times until he became the Fiscal Director/Business Administrator of the NEIU in May of 1994." (*Id.* at ¶¶ 12-13.) He remained an NEIU employee at all times relevant to the Complaint. (*See id.* at ¶ 12.)

The events giving rise to this lawsuit were set in motion in June of 2010, when Fred Rosetti, then Executive Director of the NEIU, "retired with a very lucrative retirement package in accordance with his employment contract," which led to scrutiny by federal and state authorities. (*Id.* at ¶¶ 14-15.) Plaintiff first met with state investigators at the end of 2010 and agreed to provide documents and help with their investigation. (*Id.* at ¶ 16.) Likewise, he was served with a federal subpoena on April 22, 2011 and thereafter appeared on May 18, 2011 before various federal investigators. (*Id.* at ¶¶ 18, 20.) After this meeting, Plaintiff "became an integral part of the investigation against Rosetti." (*Id.* at ¶ 21.)

According to the Complaint, the NEIU was aware of Plaintiff's cooperation. The Board Members "started discussing having Plaintiff terminated" shortly after he first began cooperating with the state investigators. (*Id.* at ¶ 17.) Plaintiff also personally informed the new NEIU Executive Director, Dr. Clarence Lamanna, of the April 22 visit by federal investigators. (*Id.* at ¶ 19.) However, "the U.S. Attorney told the NEIU's solicitor not to take any adverse action against Plaintiff; otherwise they would be interfering with a federal investigation." (*Id.* at ¶ 22.)

Rosetti was indicted for various financial improprieties on February 21, 2012. (*Id.* at ¶ 23.) He pled guilty to theft and mail fraud charges and admitted to allegations of misusing taxpayer money in October 2012. (*Id.* at ¶ 24.)

"Shortly after Rosetti's indictment, the Board resumed [its] agenda to terminate Plaintiff." (*Id.* at ¶ 25.) But before the Board could terminate him, Plaintiff avers that it first needed to manufacture cause for termination, due to the U.S. Attorney's warnings and because he had received favorable feedback on his job performance and abilities in the past. (*Id.* at ¶ 26.) It did this in various ways. First, the Board pressured its current auditor to step aside and forego the last year of his contract, while Brian Kelley and Associates was selected as New Auditor in June of 2012. (*Id.* at ¶ 27.) The Defendant Board Members Robert Schwartz, Joseph Muracco, and Louise Brzuchalski were then selected to be on the Finance Committee to monitor Plaintiff's performance. (*Id.* at ¶ 28.) "The New Auditors quickly became very friendly with the Board Members and would engage in private meetings with the Board and Finance Committee." (*Id.* at ¶ 30.) Plaintiff believes that "the Board Members encouraged the New Auditors to find fault in Plaintiff's practices, even if the problems were minor and correctable, so that they could fabricate a reason to terminate him." (*Id.* at ¶ 31.)

"In the subsequent months, the New Auditors attacked Plaintiff's business practices and Plaintiff's performance became the subject of multiple board and finance meetings." (*Id.* at ¶ 32.) This was in spite of the fact that "[b]efore the New Auditors were hired, the NEIU

always had clean audits on both the local and state level while Plaintiff was the Fiscal Director/Business Administrator." (*Id.* at ¶ 29.) "The New Auditors also gave numerous tasks to Plaintiff to complete on top of his normal duties," in the hope that he would fail at them, and then "expressed anger when he succeeded." (*Id.* at ¶¶ 33-34.)

"In February of 2014, Plaintiff was informed that he either needed to take an early retirement package or that the Board was going to bring in an independent consultant to 'point out any mistakes he may have made.'" (*Id.* at ¶ 35.) But Plaintiff refused to retire, so the Board hired an independent consultant, who met with Lamanna and the Finance Committee on May 15, 2014. (*Id.* at ¶¶ 36-37.) "On May 20, 2014, the Board voted to terminate Plaintiff's employment as Fiscal Director/Business Administrator effective June 30, 2014." (*Id.* at ¶ 38.) The twelve Board Members serving at the time—i.e., Defendants Louise Brzuchalski, Robert Schwartz, Joseph Muracco, Rick Barone, Thomas Cerra, Cy Douaihy, Eric Emmerich, Harold Empett, Kathleen Grandjean, Michael Mould, Ellen Nielsen, and Christine Plonski-Sezer—each "personally participated in the decision to terminate the Plaintiff." (*See id.* at ¶¶ 3, 39.)

Lamanna informed Plaintiff of this decision by a letter dated May 21, 2014. (*Id.* at ¶ 40.) That letter, which is attached as Exhibit A to the Complaint, explains that the Board "decided not to renew [Plaintiff's] employment" and that his employment would consequently end on June 30, 2014. (*See id.*, Ex. A.)

4

Plaintiff filed the instant Complaint on these matters on November 10, 2014. That

Complaint alleges claims for First Amendment Retaliation (Count I), Violation of Procedural

Due Process (Count II), and Civil Conspiracy (Count III) under 42 U.S.C. § 1983, as well as

claims for Violation of the Pennsylvania Whistleblower Act (Count IV) and Wrongful

Termination (Count V). The first three Counts are alleged against NEIU and all twelve Board

Members. The last two are alleged against NEIU only, though, in the course of opposing the

Defendant's Motion to Dismiss, Plaintiff agreed to voluntarily dismiss Count V. (*See* Pl.'s Br.

in Opp. to Mot. to Dismiss, Doc. 24, at 1 n.1.)

Defendants filed a Motion to Dismiss the Complaint in its entirety. (*See* Mot. to

Dismiss, Doc. 19.) They argue that each Count fails to state a claim under Federal Rule of

Civil Procedure 12(b)(6), that the individual defendants are entitled to qualified immunity,

that Plaintiff improperly requests punitive damages and attorneys' fees, and that all claims

against the Board Members both in their individual and official capacities are precluded as a

matter of law. (*See, e.g.*, Defs.' Br. in Supp. of Mot. to Dismiss, Doc. 20, at 2-3.)

### III.   Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and

6

quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even if a "complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. Analysis

### a. First Amendment Retaliation (Count I)

To make out a claim under 42 U.S.C. § 1983 for First Amendment retaliation, Plaintiff "must show (1) that [he] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

The Defendants here focus only on the causal connection factor, without challenging the applicability of the first two. (*See* Doc. 20 at 3-4.) Seeing nothing to the contrary, the Court also accepts the first two factors as properly pled. As to the third, to establish a causal connection between the protected activity and the retaliatory action,

a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

*Lauren W.*, 480 F.3d at 267. Defendants argue that "Plaintiff has made no allegations of a pattern of antagonism" and that "the facts alleged fail to establish an unusually suggestive time proximity between the alleged protected activity and the non-renewal of his contract." (Doc. 20 at 4.)

As discussed above, Rosetti pled guilty to certain charges in October 2012, (Compl. at ¶ 24), but the Board did not vote to terminate Plaintiff's employment until May 20, 2014, (*id.* at ¶ 38). Nonetheless, even this delay of nineteen months is not necessarily fatal to Plaintiff's Complaint when that Complaint contains adequate factual allegations showing that, throughout this entire time, the Board worked to fabricate cause to terminate Plaintiff rather than face the legal ramifications of firing a protected whistleblower outright. (*See id.* at ¶¶ 25-37.) Given that it takes time to fabricate sufficient justifications for termination and that Defendant allegedly began taking the requisite steps toward such fabrications "shortly" after Rosetti's indictment, (*see id.* at ¶ 25), the Court finds that the Complaint adequately pleads "an unusually suggestive temporal proximity" that adequately accounts for the significant time lag between Rosetti's indictment and Plaintiff's termination. Moreover, because Defendants' alleged activities took place consistently over the course of many

8

months, the Complaint also adequately alleges "a pattern of antagonism," which, having

began "shortly" after the indictment, is "coupled with timing to establish a causal link."

Therefore, the requisite causal connection is adequately alleged regardless of which test is

used. The Court will accordingly deny Defendants' Motion to Dismiss the First Amendment

Retaliation claim.

### b. Due Process (Count II)

> To state a claim under § 1983 for deprivation of procedural due process
> rights, a plaintiff must allege that (1) he was deprived of an individual interest
> that is encompassed within the Fourteenth Amendment's protection of "life,
> liberty, or property," and (2) the procedures available to him did not provide
> "due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000).

*Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

"The Fourteenth Amendment's procedural protection of property is a safeguard of

the security of interests that a person has already acquired in specific benefits." *Bd. of*

*Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S. Ct. 2701, 2708, 33 L. Ed. 2d

548 (1972). "To have a property interest in a benefit, a person . . . must . . . have a

legitimate claim of entitlement to it." *Id.* at 577. This entitlement is established by "the

existing rules or understandings that stem from an independent source such as state law—

rules or understandings that secure certain benefits and that support claims of entitlement to

those benefits." *Id.* Various Supreme Court decisions have held that this principle of

"entitlement" operates to create property interests in certain forms of public employment.

*See id.* at 576 (collecting cases). For instance, a public employee whose employment

9

contract creates a protected status such as tenure or that only allows termination for cause

has a protected property interest under the Fourteenth Amendment. *See Unger v. Nat'l*

*Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991). However, only

employees with "a legitimate entitlement to such continued employment" have a property

interest in that employment; an at-will employee, for instance, would not be protected by the

Fourteenth Amendment because "she serves solely at the pleasure of her employer."

*Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).

Aside from stating that Plaintiff worked for a "part of the public school system in the

Commonwealth of Pennsylvania," (*see* Compl. at ¶¶ 10, 12), the Complaint does not

mention the source from which Plaintiff's legitimate entitlement to continued employment

arises. It is only in his Brief opposing the Motion to Dismiss that Plaintiff argues that he is

protected by sections 10-1089 or 5-514 of the Pennsylvania School Code. (*See* Doc. 24 at

10.) The first section applies to "Business administrator[s]" and reads as follows:

> Unless otherwise specified in an employment agreement, the governing
> board shall, after due notice, giving the reasons therefor, and after hearing if
> demanded, have the right at any time to remove a business administrator for
> incompetency, intemperance, neglect of duty, violation of any of the school
> laws of this Commonwealth or other improper conduct.

24 Pa. Cons. Stat. Ann. § 10-1089(c). The second provides the procedure for "Removal of

officers, employes, etc." as follows:

> The board of school directors in any school district, except as herein
> otherwise provided, shall after due notice, giving the reasons therefor, and
> after hearing if demanded, have the right at any time to remove any of its
> officers, employes, or appointees for incompetency, intemperance, neglect of

10

duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

*Id.* at § 5-514.

Plaintiff does not state which section applies, but only argues generally that he falls within either category. (*See* Doc. 24 at 10.) The Complaint, however, alleges that Plaintiff served as "Fiscal Director/Business Administrator of the NEIU" since May of 1994," (Compl. at ¶ 13), thus indicating that the former applies. But unlike the protections found in section 5-514, the "Business Administrator" protections are expressly subject to any modifications that may exist in an "employment agreement." Without knowing whether Plaintiff has an employment agreement and, if so, what that agreement provides, we cannot know whether any due process protections ever attached.

But there is a more serious issue requiring dismissal of this claim. Even if Plaintiff could show that his employment agreement did bring him under the protections of the Public School Code, the termination letter that he attached as Exhibit A to his Complaint indicates that the Board only decided to *not renew* his employment contract for another term, as opposed to terminating him mid-term. Plaintiff would therefore need to show not only that agreement protected him from termination during the term of his employment agreement, but also that he had legitimate expectations of continued employment even after that specified term expired. This may be difficult given that the Pennsylvania Supreme Court has interpreted the above-cited School Code provisions to provide employees only with "job security against removal during the term of [their] employment" and not to "purport to confer

11

any extra-contractual right to continued employment or tenure beyond what the parties may have agreed to—in writing, orally, or as a matter of history and experience." *Knox v. Bd. of Sch. Dirs. of Susquenita Sch. Dist.*, 888 A.2d 640, 649 (Pa. 2005). Plaintiff could still have a property interest in employment beyond the fixed terms of the contract if certain other factors outside the agreement created the requisite legitimate expectations to create a property interest. *Cf. Perry v. Sinderman*, 408 U.S. 593, 600-03, 92 S. Ct. 2694, 2699-2700, 33 L. Ed. 2d 570 (1972) (concluding that even in the absence of a "tenure system," an employee "who has held his position for a number of years[] might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure"). But when no such expectations have been pled in the Complaint, the Court cannot conclude that the Pennsylvania School Code *standing alone* gave Plaintiff a property interest in *continued* employment. Indeed, many other courts have rejected claimed property interests in continued employment beyond the term of a plaintiff's employment agreement when that plaintiff has not shown any extraneous conditions outside the agreement from which a legitimate expectation of such continued employment could be inferred. *See, e.g., Roth*, 408 U.S. at 578; *El-Hewie v. Bergen Cnty.*, 348 Fed. App'x 790, 794 (3d Cir. 2009); *Golovan v. Univ. of Delaware*, 73 F. Supp. 3d 442, 451 (D. Del. 2014).

The Court will therefore dismiss Count II. However, because it is possible that Plaintiff could allege new facts showing that his employment was subject to due process protections, such dismissal is with leave to amend.

In dismissing Count II, the Court also notes Defendants' alternative argument that a Due Process claim must fail on the ground that Plaintiff had adequate post-deprivation remedies under Pennsylvania's Local Agency Law. (*See* Doc. 20 at 6-7.) Because we are dismissing Count II on other grounds, it is not necessary to rule on this ground. Nonetheless, for the benefit of the parties in litigating an amended complaint, the Court considers this argument to be without legal merit. If circumstances create a property interest in continued public employment, then "the Due Process Clause provides that [that interest] cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985). A public employee with a property interest in continued employment "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," before he may be terminated. *Id.* at 546. The violation of Plaintiff's due process rights therefore occurred—if at all—at the point when the Board failed to provide him with the process that he was due. *See Zinermon v. Burch*, 494 U.S. 113, 126, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990). In other words, assuming that *Loudermill* applies and that Plaintiff was owed a pre-termination hearing, the unconstitutional conduct occurred when the NEIU failed to give him that hearing, and even "the most thorough and fair post-termination hearing cannot undo the failure to provide such procedures." *Alvin v. Suzuki*, 227 F.3d 107, 120 (3d Cir. 2000).[1] The existence of post-

---

[1] Defendants cite a different portion of *Alvin* to establish the opposite proposition, that Plaintiff was

deprivation remedies is irrelevant to this analysis. *See also Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 129 (3d Cir. 1985) ("[E]ven if Pennsylvania had a procedure that might have provided Stana some redress . . . that does not diminish the nature of the deprivation, which was the denial of due process to Stana at a meaningful time . . . .").

### c. Civil Conspiracy (Count III)

"A civil conspiracy is combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose." *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). A plaintiff may allege a civil conspiracy to violate his constitutional rights, in which case he "must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

The allegations in Plaintiff's Complaint clearly set forth enough facts to infer a conspiratorial agreement. As discussed above, the Complaint alleges that the Board engaged in a nineteen-month scheme to fabricate cause to terminate the Plaintiff in retaliation for his involvement in a criminal investigation. It details the specific actions that the Board took to create this cause, as well as the general timeframe in which it took its

---

in fact required to pursue post-deprivation remedies before bringing a federal action. (*See* Doc. 20 at 6 (quoting *Alvin*, 227 F.3d at 116 ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her . . . .")).) But in the context of the *Alvin* opinion, this statement is just a reference to Plaintiff's need to attend any pre-termination hearing that satisfies due process. *See Alvin*, 227 F.3d at 116 ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."). The truism that a plaintiff cannot complain about the lack of due process when due process was offered but rejected certainly does not contradict *Alvin*'s later holding that the availability of post-deprivation procedures does not affect the initial due process deprivation.

14

actions. (*See* Compl. at ¶¶ 25-40.) While it only alleges that "the Board" as an entity took part in each of these illegal actions, it also alleges that each of the individual Defendants served on the Board "at all relevant times to this matter." (*See id.* at ¶ 3.) These allegations are sufficient at the pleading stage to allow the Court to infer that two or more people agreed to act in violation of Plaintiff's constitutional rights. Therefore, we will not dismiss Count III.

### d. Pennsylvania Whistleblower Act (Count IV)

The Pennsylvania Whistleblower Act provides, in part:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

43 Pa. Cons. Stat. Ann. § 1423(b).

Defendants focus their arguments for dismissal on subsection 1423(a), which is structured the same, but protects different forms of activity. (*See* Doc. 20 at 9-11 (quoting 43 Pa. Cons. Stat. Ann. § 1423(a), quoted at p. 16, *infra*).) They then conclude that Plaintiff does not satisfy subsection 1423(a)'s requirements. (*See id.* at 11-12.) But in the course of so doing, Defendants admit that "[t]he facts in the Complaint indicate that [Plaintiff] participated in an investigation into a former employee, Fred Rosetti." (*Id.* at 11.)

The Court agrees with this characterization of the Complaint. But if we accept these facts as true—as we must at the pleading stage—then it becomes clear that Plaintiff falls

within the ambit of subsection 1423(b), which explicitly protects employees who participate in these types of government investigations. Moreover, because, as discussed repeatedly above, the allegations also show retaliation, we find that Plaintiff has adequately alleged a violation of subsection 1423(b), insofar as he was "retaliate[d] against . . . because [he was] requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action." 43 Pa. Cons. Stat. Ann. § 1423(b).

But even if we construe the Complaint under subsection 1423(a), the claim would still contain adequate allegations to pass the pleading stage. Subsection 1423(a) provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

*Id.* at § 1423(a).

Here, the Complaint alleges meetings with government agents that made Plaintiff become "an integral part of the investigation against Rosetti." (*See* Compl. at ¶¶ 20-21.) To become an integral part of the investigation, he would at the very least need to provide a verbal report about Rosetti's activities. Moreover, such a report would by its very nature concern "wrongdoing," which is defined in the Whistleblower Law as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to

16

protect the interest of the public or the employer." 43 Pa. Cons. Stat. Ann. § 1422. Because

Rosetti's activities led to a federal prosecution ending in a guilty plea, (see, e.g., Compl. at

¶¶ 15, 23-24), they clearly qualify as violations of more than a technical nature.

Finally, it does not matter that Plaintiff only reported fellow employee Rosetti's

wrongdoing and not the wrongdoing of his actual employer, the NEIU, as Defendants argue.

(See Doc. 20 at 11.) The Pennsylvania Supreme Court has interpreted subsection 1423(a)

to encompass reports not only of wrongdoing by the employer itself but also of "illegal

activity within [the plaintiff's] own agency" by fellow employees. See Golaschevsky v.

Commonwealth of Pennsylvania Dep't of Envtl. Protection, 720 A.2d 757, 759 (Pa. 1998).

This was simply a recognition that

> pursuant to the plain language of 43 P.S. § 1422, "wrongdoing" includes not
> only violations of statutes or regulations that are "of the type that the employer
> is charged to enforce," but violations of any federal or state statute or
> regulation, other than violations that are "of a merely technical or minimal
> nature."

Id.

Therefore, the Complaint alleges at the very least a verbal report to the appropriate

authority of an instance of wrongdoing. So, regardless of whether we read the Complaint

under subsection (a) or (b), Plaintiff adequately states a claim under the Pennsylvania

Whistleblower Law.

### e. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). Qualified immunity serves the dual purpose of holding government officials accountable when they exercise power irresponsibly and protecting officials from "harassment, distraction, and liability when they perform their duties reasonably." *Id.* "[Q]ualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 1295, 157 L. Ed. 2d 1068 (2004) (Kennedy, J., dissenting)).

In deciding whether to grant qualified immunity, the Court must consider two questions: First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

Defendants' only argument to establish qualified immunity is a short, conclusory paragraph that states:

Herein, Plaintiff has failed to allege a cognizable claim for violation of a constitutional or statutory right. Furthermore, based upon the allegations of the Complaint, Plaintiff's claim must be dismissed based upon qualified immunity because there is no basis for a claim that Plaintiff's termination violated his rights. There is no case law which can establish that their actions were unlawful based upon pre-existing case law. As such, all claims against the individual defendants must be dismissed with prejudice.

(Doc. 20 at 17.)

The Court has already held that the Complaint does indeed allege that the Defendants' conduct violated Plaintiff's First Amendment rights and, if properly repleaded, could show a violation of his Fourteenth Amendment due process rights. Both sets of rights are well-established and subject to a wealth of United States Supreme Court case law. Therefore, dismissal on the grounds of qualified immunity is inappropriate at this time. While it is possible that further discovery may show that the Defendants did not act in violation of Plaintiff's clearly-established constitutional rights, the submissions presently before us, when considered in the light most favorable to the Plaintiff, show that they did. The Court will accordingly deny the claim for qualified immunity, but will do so without prejudice to Defendants' right to reassert it at the appropriate time.

### f. Punitive Damages

Plaintiff's three 1983 claims (Counts I – III) make demands for punitive damages. A "jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983).

Because the Plaintiff has adequately alleged that Defendants acted in disregard of at least his First Amendment rights, the Court is not prepared to say at the pleadings stage that their actions were not "motivated by evil motive or intent" or do not "involve[] reckless or callous indifference" to Plaintiff's federally protected rights. Whether they did or did not act with the requisite mental is inherently a question of fact best resolved for trial. At this stage, Plaintiff is within his rights to demand punitive damages from the individual Board Member Defendants when his Complaint adequately alleges that they violated his federal rights in a manner which, if proven, could be considered to be motivated by evil motive or intent or the result of reckless or callous indifference.

The situation is different with regard to the NEIU. "[M]unicipalities, and more broadly, state and local governments entities, are immune from punitive damages under" section 1983. *Doe v. County of Centre*, 242 F.3d 437, 455 (3d Cir. 2001) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981)). Plaintiff appears to accept this, as his Opposition Brief omits mention of the NEIU and only argues that punitive damages against the individual Defendants are proper. (*See* Doc. 24 at 19-20.) Nonetheless, Counts I – III are alleged against "All Defendants" and do not distinguish their demands among the various parties. Because Plaintiff cannot as a matter

of law seek punitive damages against NEIU, the Court will grant Defendants' Motion only to

the extent that it seeks such a demand against NEIU to be stricken.

### g. Official and Personal Capacity Claims against the Individual Defendants

The Complaint purports to sue the twelve Board Member Defendants under section

1983 "individually and in their official capacity as members of the Board." (Compl. at ¶ 3.)

The Supreme Court has described the difference between official and individual (or

"personal") capacity suits as follows:

> Personal-capacity suits seek to impose personal liability upon a government
> official for actions he takes under color of state law. *See, e.g., Scheuer v.*
> *Rhodes*, 416 U.S. 232, 237-238, 94 S. Ct. 1683, 1686-1687, 40 L. Ed. 2d 90
> (1974). Official-capacity suits, in contrast, "generally represent only another
> way of pleading an action against an entity of which an officer is an agent."
> *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55, 98
> S. Ct. 2018, 2035, n.55, 56 L. Ed. 2d 611 (1978). As long as the government
> entity receives notice and an opportunity to respond, an official-capacity suit
> is, in all respects other than name, to be treated as a suit against the entity.
> *Brandon* [*v. Holt*], 469 U.S.[ 464,] 471-472, 105 S. Ct.[ 873,] 878[, 83 L. Ed.
> 2d 878 (1985)]. It is *not* a suit against the official personally, for the real party
> in interest is the entity. Thus, while an award of damages against an official in
> his personal capacity can be executed only against the official's personal
> assets, a plaintiff seeking to recover on a damages judgment in an official-
> capacity suit must look to the government entity itself.

*Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).

In other words, "[a]lthough 'state officials literally are persons,' an official-capacity suit

against a state officer 'is not a suit against the official but rather is a suit against the official's

office. As such it is no different from a suit against the State itself.'" *Hafer v. Melo*, 502 U.S.

21, 26, 112 S. Ct. 358, 362, 116 L. Ed. 2d 301 (1991) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989)).

Under these principles, the official capacity suits against the Board Members are really suits against the government entity for which they serve: the NEIU. But Plaintiff already asserted her 1983 claims against the NEIU. It is therefore duplicative to raise the same claims against the Board Members in their official capacity. The Court will accordingly dismiss the official capacity claims against them. Because these claims are duplicative as a matter of law, leave to amend would be futile and they will be dismissed with prejudice.

On the other hand, the personal capacity claims are properly raised. Generally, to proceed with a § 1983 claim, "a plaintiff must allege [a] violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988). To act under color of state law means to use authority derived from the state to cause the violation of constitutional rights. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005); *see also Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482 (1982) ("Our cases have . . . insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.").

Defendants rely on the above language in *Lugar* to argue that "Plaintiff cannot sustain her claim against the individual defendants because actions in their individual

22

capacity do not constitute state action . . . ." (Doc. 20 at 20.) But this argument is

misguided. If accepted, it would prevent any Plaintiff from ever raising a 1983 claim

against any government actor in his personal capacity simply by redefining the "acting

under color of state law" requirement to exclude actions by individual actors. The case

law has never understood that requirement in this way. *Lugar* itself explained when a

deprivation is fairly attributable to the state as follows:

> First, the deprivation must be caused by the exercise of some right or
> privilege created by the State or by a rule of conduct imposed by the state
> or by a person for whom the State is responsible. . . . Second, the party
> charged with the deprivation must be a person who may fairly be said to be
> a state actor. This may be because he is a state official, because he has
> acted together with or has obtained significant aid from state officials, or
> because his conduct is otherwise chargeable to the State.

*Lugar*, 457 U.S. at 937. The Board Members clearly acted pursuant to a privilege

created by the state when they used their positions as the Board of a state entity to

terminate Plaintiff's employment. They were also clearly state actors because they did

this during their employment as state officials. Defendants offer no reason why we

should assume that these government employees, acting as government employees,

were actually acting only as private citizens. As such, the personal liability claims are

properly asserted under established precedent and the Court will deny Defendants'

request to dismiss them.

### h. Attorneys' Fees

Finally, Defendants challenge Plaintiff's demand for attorneys' fees in relation to its Whistleblower claim. (Doc. 20 at 20.) However, the Pennsylvania Whistleblower Law provides that "[a] court shall . . . award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the complainant prevails in the civil action." 43 Pa. Cons. Stat. Ann. § 1425. Defendants' attempts to ignore this provision are without foundation.

### V.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 19) is **GRANTED IN PART AND DENIED IN PART**. A separate Order follows.

Robert D. Mariani
United States District Judge