**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THOMAS RINK, | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | ELECTRONICALLY FILED |
| vs. | : | |
| | : | |
| NORTHEASTERN EDUCATIONAL | : | |
| INTERMEDIATE UNIT 19, et al. | : | NO: 3:14-CV-2154 |
| Defendants | : | |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.  PROCEDURAL HISTORY

After the Court's Decision on a Motion to Dismiss, the Plaintiff filed an

Amended Complaint on December 28, 2015.  *See* Document No. 40. The Defendants

filed a Motion to Dismiss Count II of the Amended Complaint, alleging a procedural

due process violation, which is still pending before the Court. The Amended

Complaint alleges that in June 2010, Fred Rosetti, the Executive Director of the

NEIU, retired and came under scrutiny.  *See* the Amended Complaint, at 18-19.

Count I of the Complaint alleges First Amendment violations against all of the

Defendants as retaliation for Plaintiff testifying against Rosetti.  Id. at Count I. Count

II alleges Due Process violations against all Defendants based upon an alleged failure

to provide a hearing pursuant to §10-1089 of the Pennsylvania School Code.  Id. at

Count II. Count III alleges civil conspiracy against all of the Defendants.  Id. at Count

III. Count IV alleges a violation of the Pennsylvania Whistle Blower Act. <u>Id</u>. at Count

IV. Count V of the Complaint has been dismissed. *See* Document No. 50.

## II.    FACTS

*See* Defendants' Statement of Material Facts.  Furthermore, the Second

Amended Complaint in this matter is filled with theories and allegations regarding the

defendants and their motives.  In discovery, Plaintiff has failed to offer any evidence

to support these theories, or his claims.

## III.   QUESTIONS PRESENTED

1.    Are Defendants entitled to summary judgment on Plaintiff's First
      Amendment Retaliation Claim?

      Suggested Answer: Yes.

2.    Are Defendants entitled to summary judgment on Plaintiff's civil conspiracy
      claim?

      Suggested Answer: Yes.

3.    Are Defendants entitled to summary judgment on Plaintiff's Procedural Due
      Process Claim?

      Suggested Answer: Yes.

4.    Do the defendants have qualified immunity?

      Suggested Answer: Yes.

5.    Are Defendants entitled to summary judgment on Plaintiff's Whistleblower
      Act claim?

      Suggested Answer: Yes.

6.     Are Defendants entitled to summary judgment on Plaintiff's claim for punitive damages?

       Suggested Answer: Yes.

7.     Are the individual Defendants entitled to summary judgment?

       Suggested Answer: Yes.

## IV. STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Initially, the moving party must show the absence of a genuine issue concerning any material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257; *see* Celotex Corp., 477 U.S. at 323-324. Neither unsworn statements of counsel in memoranda submitted to the Court, nor unsupported conclusory allegations in the pleadings will dispute a material fact. *See* Fed. R.Civ. P. 56(e), Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990). Third Circuit stated in Lauren W. v. DeFlaminis, 480 F.3d 259, 272 (3d Cir. 2007), "[t]he fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony

unless it is inherently implausible even if the testimony is that of an interested witness."

## V.    LAW AND ARGUMENT

### A.    Plaintiff has failed to produce any evidence to establish a First Amendment Retaliation Claim

It is well established that a plaintiff's retaliation claim is subject to a three-step, burden-shifting methodology. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002)(*citing* Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 675 (1996)). Plaintiff cannot produce prima facie evidence of First Amendment retaliation. To state a First Amendment retaliation claim, a public employee plaintiff must allege "that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009)(*citing* Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006)). There is no evidence in this matter to establish that Plaintiff's participation in the Rosetti investigation was a substantial factor in the decision not to renew his employment.

To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff "usually must prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a

causal link." <u>DeFranco v. Wolfe</u>, 387 F. App'x 147, 155 (3d Cir. 2010) (*citing* <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007)).

"For temporal proximity alone to establish causation, the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997). Cases that base proof of causation on temporal proximity between the plaintiff's protected activity and the employer's retaliation "uniformly hold that the temporal proximity must be very close." <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001).

As discussed in the decision on the Motion to dismiss, Plaintiff has alleged that he was subjected to a pattern of antagonism. Plaintiff has presented no evidence to establish this alleged antagonism. *See* <u>Kovac v. Pennsylvania Tpk. Comm'n</u>, 444 F. App'x 588, 591 (3d Cir. 2011) (reviewing cases where circumstantial evidence was deemed sufficient to withstand a motion for summary judgment, including when "protected activity was well documented," or when "other similarly situated employees who had not engaged in protected activities were not terminated"). For example, courts have found the requisite causation when two years elapsed between the constitutionally protected activity and the retaliatory acts, because of continued retaliatory acts throughout this time. *See* <u>Woodson v. Scott Paper</u>, 109 F.3d 913, 921 (3d Cir. 1997) (holding the plaintiff could only prevail if there was also a "pattern of antagonism" because a two year gap is too attenuated).

The record is devoid of any evidence to establish the pattern of antagonism pled by the Plaintiff. Plaintiff's Complaint alleges that the Board hired new auditors and instructed them to find fault with his practices. However, Plaintiff cannot identify evidence to support the allegation that the Board tried to influence the Kelly firm's audit findings. *See* Plaintiff's deposition, at 176-177. Furthermore, the employees of the Kelly firm denied those allegations. Brian Kelly testified that when his firm was retained in 2012, they were not given any instructions with regard to Tom Rink. *See* deposition of Brian Kelly, at 74-75. No one on the NEIU Board asked them to go after Tom Rink. <u>Id</u>. at 75. He also denied ever becoming friendly with Board members and testified that there was nothing other than a business relationship between his firm and the NEIU. <u>Id</u>. No one from the NEIU Board ever came to him and encouraged him to find fault with the Plaintiff's practices. <u>Id</u>. at 76. His employee, Brad Murray, provided nearly identical testimony. *See* the deposition of Brad Murray at 54-56.

Plaintiff also testified that Clarence Lamanna, the former Executive Director, informed him of conversations the board had about him. See the Deposition of Plaintiff at 86-87; 177-178. Clarence Lamanna never told him about any conversations where Board Members directed someone at the Kelly firm to find fault in his practices. <u>Id</u>.

Plaintiff also alleged that the findings of the Kelly firm were an attack on him. Both Kelly and Murray also discussed their opinions regarding the business practices

of Plaintiff at the NEIU. When they looked at the records of the NEIU as of June 30, 2011, the balances, final balance sheets, and fund balances did not agree with the issued financial statement of June 30, 2011. *See* deposition of Brian Kelly, at 30. Both Kelly and Murray described the NEIU's books as "unauditable." Id.; Deposition of Brad Murray, at 39. The errors of the Plaintiff required them to perform an additional $42,000.00 worth of work. *See* deposition of Brian Kelly, at 78-79. The Plaintiff had poor accounting practices like back dating checks and leaving the books open after June 30, the end of the fiscal year. Id. at 85-86. There were problems with the recovery of indirect costs. Id. at 89. In 2012 there were 226 adjusting journal entries in the audit report. Id. at 94. Their audits in 2012 and 2013 were based upon information provided to them by the NEIU and its employees. Deposition of Brad Murray, at 57. There is nothing in the record to establish that these findings were requested by the defendants or part of a larger plan to create evidence against the Plaintiff.

Aside from a lack of any evidence establishing that the NEIU's decision to not renew the contract was not a retaliatory act for his testimony in the Fred Rosetti matter, there is an abundance of uncontroverted evidence which establishes that his testimony against Fred Rossetti had nothing to do with the Board's decision. This includes the audit reports, as well as testimony of Brian Kelly, Brad Murray and George Shovlin.

Plaintiff also made allegations about the defendants' intentions when they hired George Shovlin. He performed an independent investigation of Plaintiff and the business department. When he started his investigation, he was given a clean slate and not told how the Board would like to see his investigation go. See the deposition of George Shovlin, at 94. None of the Board members suggested any findings he should have in his investigation. Id. There was no discussion about a relationship between Mr. Rink and Fred Rosetti. Id. at 95. He did not have any knowledge of Tom Rink's involvement in the Fred Rosetti investigation when he started. Id. at 97. Based upon the issues that were raised in his examination, as well as the materiality and number of those issues, he believed that they warranted, if the Board chose to do so, termination of Mr. Rink's employment. Id. at 22. If he had a company with a $45 Million budget, he would not be confident in Plaintiff as CFO or Business Manager. Id. at 39. He went over with the Board members the issues, including the over accrual of social security tax, failure to record early retirement incentive payments up to $127,000.00, underreporting of a Verizon bill in 2012 of $449,000.00, and failure to do it again in 2013 in the amount of $229,000.00, as well as failure to record sales tax. Id. at 61. He then told the Board that it was his opinion that these issues justified termination, if the Board chose to do so. Id. at 61-62. On May 20, 2014, he presented his findings to the entire NEIU Board. Id. at 67-68. After an executive session, a motion was made not to renew the contract of Tom Rink. Id. at 69.

According to Plaintiff, Louise Brzuchalski was one of his biggest critics and allegedly part of a conspiracy to terminate him for testifying against Fred Rosetti. This allegation makes no sense when considering the evidence in this matter. By the Plaintiff's own admission, Louise Brzuchalski was the original whistleblower against Fred Rosetti. She requested his contract, called the newspaper, and reported the incident to the Auditor General. Plaintiff has provided no explanation as to why the original whistleblower would have a motive to retaliate against him for providing documents and testimony in an investigation which she is responsible for starting. The only conclusion that can be reached is that the decision had nothing to do with his participation in the Fred Rosetti investigation.

Furthermore, Plaintiff has been unable to provide any evidence linking the Defendants to Fred Rosetti, nor provide any explanation why the Board members, many of which came on after Fred Rosetti left the NEIU, would have any motive for retaliating against him. Again, there is no evidence because Plaintiff has none. The only thing that Plaintiff has produced in this matter is wild theories and unsupported allegations. They are not sufficient to withstand summary judgment.

Plaintiff has also been unable to provide any explanation as to why he was the only whistleblower terminated by the NEIU. See the deposition of Fred Rosetti at 37-38. There were five NEIU employees who participated in the investigation of Fred Rosetti. Id. Plaintiff was the only one who is no longer working at the NEIU. Id. This is further evidence that the decision not to renew Plaintiff's employment had

nothing to do with his participation in the Fred Rosetti investigation which took place in 2010 and 2012.

The record in this matter is devoid of any evidence to substantiate the allegations made by Plaintiff in this matter. Because Plaintiff cannot provide any evidence to establish that his participation in the Rosetti investigation was a substantial or motivating factor in the decision not to renew his contract, the Defendants are entitled to summary judgment.

## B. Plaintiff has failed to present any evidence to establish a civil conspiracy

### (i) Plaintiff's civil conspiracy claim must be dismissed as he has not proven an underlying constitutional violation

Civil conspiracy requires the plaintiff to plead and prove an underlying tort occurred, "because the cause of action is wholly subordinate to the underlying tort's existence." Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000). "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." Pelagatti v. Cohen, 370 Pa. Super. 422, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987). The defendants are entitled to summary judgment on the underlying tort claims, so the civil conspiracy claim cannot stand alone. "[T]here can be no liability for a conspiracy to violate Section 1983 without an actual violation." Holt Cargo Sys., Inc. v. Del. River Port Auth., 20 F.Supp.2d 803, 843 (E.D.Pa. 1998).

### (ii) Plaintiff has presented no evidence to establish a conspiracy

To prove a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir.1993) (*quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). Plaintiff has alleged that Defendants have conspired to violate his rights yet he has failed to produce evidence to establish an agreement or plan formulated and executed by the Defendants to achieve this conspiracy. Without a factual showing which gives some substance to the conspiracy claims, Plaintiff's conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a Defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. *See* Young vs. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

Furthermore, in the conspiracy context, the requirement of personal participation in the alleged wrongdoing means that there must be evidence of "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999).  There must be an agreement or an understanding to deprive the complaining plaintiff of his or her constitutional rights. Kelley v. Myler, 149 F.3d 641, 648-49 (7th Cir. 1998); Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988). "To demonstrate a conspiracy under § 1983, a plaintiff

must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" <u>Parkway Garage, Inc. v. City of Phila.</u>, 5 F.3d 685, 700 (3d Cir. 1993). In this case, Plaintiff has not presented any evidence of an agreement between the board members to deny him of any constitutional right. Contrary to his unsubstantiated assertion, there is no evidence of any agreement among the board members to violate Plaintiff's constitutional rights. Plaintiff has been unable to produce any direct evidence of a conspiracy. Furthermore, despite having the executive director, Clarence Lamanna, reporting back to him after each board executive session, he was never told of any agreement to violate his rights. Plaintiff testified that he was not aware of any meeting between the Defendants where they came up with a plan to terminate him. *See* the Deposition of Plaintiff, at 305.

Plaintiff also alleged in the Complaint that there was a nineteen month scheme to fabricate cause to terminate him. As discussed above, Plaintiff has failed to substantiate these allegations with any evidence. The basis of Plaintiff's claim regarding this issue is that the auditors and independent consultant hired by the NEIU were hired only to fabricate cause to terminate him. First, both the auditors and independent consultant denied this allegation. The auditors both testified that they were never asked to review the plaintiff's performance, and never did. See the Deposition of Brian Kelly at 76, 97; Deposition of Brad Murray at 27-30. George Shovlin also denied being asked to make any determination regarding the plaintiff

other than what was warranted by his investigation. *See* the Deposition of George Shovlin at 18-19.

Furthermore, there is nothing fabricated about the information. More importantly, the NEIU did not need cause to not renew the contract of Mr. Rink. The uncontradicted testimony in this matter is that the Board voted on May 20, 2014 not to renew the employment of the Plaintiff as of the end of the fiscal year. Given this, and the testimony of record, it is clear that the NEIU did not need cause to not renew the employment of Mr. Rink.

**C.    Defendants are entitled to summary judgment on Plaintiff's Procedural Due Process Claim**

As indicated earlier, it is the Defendant's position that Plaintiff has failed to state a due process claim in the Amended Complaint. By filing this motion, defendants do not waive that argument, and incorporate it herein by reference.

Section 10-1089 of the School code only provides protections for business managers who are "removed" during their term. It does not provide a business administrator with employment for life absent misconduct. Knox v. Board of School Directors of Susquenita School District, 888 A.2d 640 (Pa. 2005). As discussed in Knox, Section 10-1089 only provides a hearing in cases of "removal." Id. It does not apply if a business manager's contract is not renewed. Id. Plaintiff agreed that the vote taken at the May 20, 2014 Board meeting was to not renew his employment as of the end of the fiscal year. *See* the Deposition of Plaintiff at 241.

On May 21, 2014, Plaintiff was informed that "his employment would not be renewed" and would end on June 30, 2014, the end of the fiscal year. The decision not to renew his contract does not constitute "removal" and does not invoke the protections of Section 10-1089. Id. Section 10-1089 applies only to "removal" of school business administrators and does not confer any right to continued employment or tenure. Id. at 649. Because Plaintiff was not "removed" from his employment, he is not entitled to the protections of Section 10-1089. Plaintiff has no property interest in his job and Count II of the Complaint must be dismissed.

Furthermore, Plaintiff had no employment contract. As the Court noted in the Court's prior decision, Plaintiff may still have a property interest in employment if certain other factors created the requisite legitimate expectations to create a property interest. *See* the Court's Memorandum Opinion, Document 38, at 11-12 (*citing* Perry v. Sinderman, 408 U.S. 593, 600-603 (1972)). Defendants incorporate by reference the argument contained in the Second Motion to Dismiss.

Although the Defendants deny that this is a basis for creating a property interest, the record is also devoid of any facts to establish a continued expectation of continued employment based upon the NEIU's policies or practices. In fact, Plaintiff's own testimony establishes that he knew his employment could be discontinued by the NEIU.

To have a property interest in a job, a person must have more than a unilateral expectation of continued employment; rather, he must have a legitimate entitlement

to such continued employment. <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972). There is little case law to indicate what is required to establish these extraneous conditions, but what does exist it is clear that an absence of any such terms is fatal to a plaintiffs claim. *See* <u>Bd of Regents v. Roth</u>, 408 U.S. 564, 578 (1972).

Furthermore, a local government in Pennsylvania cannot provide its employees with tenure status unless there exists express legislative authority for doing so. *See* <u>Stumpp v. Stroudsburg Mun. Auth.</u>, 540 Pa. 391, 658 A.2d 333, 334 (Pa. 1995); <u>Rosenthal v. Rizzo</u>, 555 F.2d 390, 392 (3d Cir. 1977). <u>Appeal of Gagliardi</u>, 401 Pa. 141, 163 A.2d 418, 419 (Pa. 1960) (A municipality is a creature of the state and possesses only such powers of government as are expressly granted to it and as are necessary to carry the same into effect."). As the Pennsylvania Supreme Court has stated, "'tenure in public employment, in the sense of having a claim to employment which precludes dismissal on a summary basis is, where it exists, a matter of legislative grace.'" <u>Stumpp</u>, 658 A.2d at 334 (*quoting* Scott, 166 A.2d at 281).

In <u>Knox</u>, the Court provided:

> Thus, Section 10-1089(c) does not provide a school business administrator with employment for life absent misconduct falling into one of the enumerated statutory circumstances. As this Court noted in Scott, "where the legislature has intended that tenure should attach to public employment, it has been very explicit in so stating." Scott, 166 A.2d at 281. To read into Section 10-1089(c) any such explicit legislative grant of tenure in the position of school

business administrator is to go beyond what the statute
provides.

888 A.2d at 649.

Plaintiff testified that he believed his job was in jeopardy for a few years

leading up to the vote not to renew his employment. In July 2013, Clarence Lamanna

told him he should focus on the findings for the 2012 audit, and that if he did not

correct them, he would be terminated. *See* the Deposition of Plaintiff at 146. This, as

well as the lack of any evidence to establish a continued expectation of continued

employment, requires entry of summary judgment. Plaintiff has no property interest

in his position and no legitimate expectation of continued employment. As such,

defendants are entitled to summary judgment.

**D.      The Defendants have qualified immunity**

In deciding whether officials are entitled to claim qualified immunity, we

engage in a three-part inquiry: (1) whether the plaintiffs alleged a violation of their

statutory or constitutional rights; (2) whether the right alleged to have been violated

was clearly established in the existing law at the time of the violation; and (3)

whether a reasonable official should have known that the alleged action violated the

plaintiffs' rights. Rouse v. Plantier, 182 F.3d 192, 196-97 (3d Cir. 1999).

The Supreme Court, in Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143

L.Ed.2d 818 (1999), provided guidance with respect to how qualified immunity is to

be determined. A government official is protected by qualified immunity "generally

turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." 526 U.S. at 614.The Court then stated:

> In Anderson, we explained that what 'clearly established' means in this context depends largely "upon the level of generality at which the relevant 'legal rule' is to be identified." 483 U.S. at 639, 107 S.Ct. 3034. "[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." Id., at 640, 107 S.Ct. 3034 (citations omitted); see also United States v. Lanier, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

Id. at 614-615.

Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. (brackets and internal quotation marks omitted). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. Al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted). "We do not

require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 2083. The proposition that for the constitutional or statutory right to be considered "clearly established", thus defeating qualified immunity, there must be authority stated at a sufficiently high level that is specific enough to put a reasonable official on notice that the conduct is unlawful, was recently reiterated in Vincent v. City of Sulphur, 2015 U.S. App. LEXIS 18761, 2015 WL 6688006 (5th Cir. 2015).

Section 10-1089 only provides protections for business managers who are "removed" during their term. It does provide a business administrator with employment for life absent misconduct. Knox v. Board of School Directors of Susquenita School District, 888 A.2d 640 (Pa. 2005). As discussed in Knox, Section 10-1089 only provides a hearing in cases of "removal." Id. It does not apply if a business manager's contract is not renewed. Id. As such, the action of the board was objectively reasonable in not offering a hearing prior to voting not to renew the Plaintiff's employment. Plaintiff has identified no actions on the part of the Defendants which were unlawful. Plaintiff cannot cite to any case law to indicate that the right to a hearing prior to a vote not to renew a business manager's contract was clearly established in 2014. As such, Plaintiff's due process claim must be dismissed as the Defendants are entitled to qualified immunity.

With regard to the Plaintiff's other claims, as indicated above, there is no evidence to establish retaliation or a conspiracy. Furthermore, the uncontroverted

testimony of the Defendants is that they relied upon their solicitor in recommending

an independent auditor, George Shovlin.  After his report, they relied upon his

recommendations in deciding not to renew the Plaintiff's employment.  These actions

are objectively reasonable and do not violate any clearly established authority. As

such, Defendants are also entitled to qualified immunity for the remaining claims

against them.


E.    **Defendants are entitled to summary judgment on the Whistleblower Act
      Claim**

Pennsylvania's Whistleblower Law prohibits an "employer" from

discriminating or retaliating against an employee "because the employee. . . makes a

good faith report [of]. . . an instance of wrongdoing or waste." 43 Pa. Stat. Ann. §

1423. Causation under the Whistleblower Law is proved in the same way as under

Title VII and § 1983: temporal proximity and a pattern of antagonism. McAndrew v.

Bucks County Bd. of Comm'rs, 982 F. Supp. 2d 491, 505 (E.D. Pa. 2013).

Plaintiff's prima facie evidentiary burden encompasses a requirement that he

produce some evidence of a causal connection between his involvement in the Rosetti

investigation and the decision not to renew his employment. O'Rourke v.

Commonwealth, 778 A.2d 1194, 1200, 566 Pa. 161 (Pa. 2001) (citing Golaschevsky

v. Department of Environmental Protection, 554 Pa. 157, 720 A.2d 757, 759 (Pa.

1998)). *See also* Callaghan v. Haverford Township, 345 Fed. Appx. 767, 771 (3d Cir.

Sept. 21, 2009). This connection "may not be predicated upon 'vague and

inconclusive circumstantial evidence.'" <u>Sea v. Seif</u>, 831 A.2d 1288, 1293 n. 5 (Pa. Commw. 2003) (*quoting* <u>Golaschevsky</u>, 720 A.2d at 759). Rather, "a plaintiff must show by concrete facts or surrounding circumstances that the report (of wrongdoing or waste) led to [the adverse employment action], such as that there was specific direction or information received not to file the report or (that) there would be adverse consequences because the report was filed." <u>Golaschevsky</u>, supra, at 759 (quoting <u>Gray v. Hafer</u>, 168 Pa. Commw. 613, 651 A.2d 221, 225 (Pa. Commw. 1994)). Here, the record cannot reasonably support a causal connection between Plaintiff's participation in the Rosetti investigation and the decision not to renew his employment.

The Court of Appeals for the Third Circuit has held that "the mere fact that an adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1302 (3d Cir. 1997). Moreover, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997), quoting Robinson, 120 F.3d at 1302. E.g., <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989), cert. denied, 493 U.S. 1023, 110 S. Ct. 725, 107 L. Ed. 2d 745 (1990) (Finding that causal connection was established were only two days elapsed between the protected activity and plaintiff's discharge.)

As argued extensively with regard to Plaintiff's First Amendment retaliation claim, Plaintiff has not presented any evidence to establish a causal connection between his participation in the Rosetti investigation and the decision not to renew his employment. He does not allege that his supervisors threatened to fire him or to impose any other adverse consequences because of his report, nor does he establish any other "concrete facts" to connect the report with the decision not to renew his employment. Instead, in attempting to show a causal connection, Plaintiff relies solely on vague and inconclusive allegations without any support in the record. As such, the Defendants are entitled to summary judgment.

**F.      Plaintiff has failed to produce any evidence to support a claim for punitive damages**

Under §1983, punitive damages are recoverable where the defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights. Smith v. Wade, 461 U.S. 30, 56 (1983)); Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996) ("Punitive damages may be awarded under 42 U.S.C. § 1983' when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' ") (quoting Smith v. Wade, 461 U.S. 30, 56, 75 L. Ed. 2d 632, 103 S. Ct. 1625 (1983)). "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." Stachura, 477 U.S. at 306 n.9.

The record in this matter is devoid of any evidence of actions by the Defendants which were motivated by an evil motive or ill will. The Plaintiff has likewise failed to produce any evidence of reckless of callous indifference to his rights. Plaintiff must do more than make unsupported allegations in order to establish a claim for punitive damages. Because he has failed to do so, the Defendants are entitled to summary judgment.

**G.      Plaintiff has produced no evidence of any affirmative acts by the Defendants to support him claim against the individual defendants**

In order to state a viable 1983 claim plaintiff must make a showing that the conduct complained of was committed by a person acting under color of law and that said conduct deprived him of a right, privilege, or immunity secured by the Constitution or by a statute of the United States. Cohen v. City of Philadelphia, 736 F.2d 81, 83, (3d Cir. 1984). A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of his constitutional rights. Monell v. Department of Social Serv. of the City of N.Y., 436 U.S. 658, 694-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Capone v. Marinelli, 868 F.2d 102, 106 n.7 (3d Cir. 1989). This is the personal involvement requirement. Civil rights liability may not be imposed on the principle of respondeat superior. Id. at 106 (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)).

The Third Circuit has held that individual government defendants "in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Individual liability may be pled in two forms. Sheils v. Bucks Cnty. Domestic Relations Section, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013) (citing Santiago v. Warminster Twp., 629 F.3d 121, 127 n.5 (3d Cir. 2010)). The first form requires a plaintiff to aver with sufficient factual support that the individual defendant(s) established and maintained a discriminatory policy, practice, or custom with "deliberate indifference to the consequences." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). The second form requires plaintiffs to plead plausible facts suggesting the individual defendants participated in violating the plaintiff's rights, directed others to violate them, or, had knowledge of and acquiesced to the violations. Santiago, 629 F.3d at 129 n.5. Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Plaintiff has failed to produce any evidence to support a claim against any of the individual defendants. The only evidence presented is that the individual defendants were the board members who voted not to renew his employment. There has been no evidence to establish what actions were taken by any of the individual defendants to deprive him of his rights. An official sued under § 1983, however, may only be held personally liable "for his or her own misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). For this reason, defendants' status as board members alone cannot serve as a basis for holding them liable. Evancho v. Fisher, 423 F.3d 347, 353-354 (3d Cir. 2005). Plaintiff cannot recover without demonstrating that the Defendants played an affirmative role in bringing about the violation. Black v. Indiana Area School District, 985 F.2d 707, 712 (3d Cir. 1993).

The Plaintiff has failed to produce any facts to establish that the defendants deprived him of any constitutional rights. Plaintiff's Complaint and Amended Complaint makes general allegations about the "Board Members." However, Plaintiff has not produced any evidence to establish any actions taken by any of the Defendant Board Members to support his claims other than the vote they took in May of 2014.

Plaintiff has failed to produce evidence of any other action by a board member to establish the alleged antagonism, directions to the auditors, or conspiracy to terminate him. In fact, many of the Defendants, including Rick Barone, Cy Douaihy,

24

Michael Mould, Ellen Nielsen and Christine Plonski-Sezer, were never even mentioned during discovery. Because the record lacks any evidence of personal involvement by the Defendants in depriving Plaintiff of his constitutional rights, they are entitled to summary judgment with respect to the claims against them in their individual capacity.

MARSHALL  DENNEHEY
WARNER COLEMAN & GOGGIN

By:_____
William J. McPartland, Esquire
Attorney ID. No:  PA 94214
P.O. Box 3118
Scranton, PA  18505-3118
(570) 496-4600

## **L.R. 7.8(b) CERTIFICATE**

This brief complies with the Court's Order dated January 21, 2016, granting

Defendant leave to file a Brief which does not exceed 25 pages or 8,000 word.  The

brief is 25 pages and contains 5994 words.


                    MARSHALL  DENNEHEY
                    WARNER COLEMAN & GOGGIN

By:_____
               William J. McPartland, Esquire
               Attorney ID. No:  PA 94214
               P.O. Box 3118
               Scranton, PA  18505-3118
               (570) 496-4600

## **CERTIFICATE OF SERVICE**

I, William J. McPartland, Esquire, hereby certify that on the 10th day of

February, 2016, I served a true and correct copy of the foregoing Brief in Support of

Motion for Summary Judgment upon the following individual via electronic mail:

Brett A. Datto, Esquire
Weir & Partners LLP
1339 Chestnut Street
Suite 500
Philadelphia, PA 19107

MARSHALL  DENNEHEY
WARNER COLEMAN & GOGGIN

By:_____
       William J. McPartland, Esquire
       Attorney I.D. No:  PA 94214
       P.O. Box 3118
       Scranton, PA  18505-3118
       (570) 496-4600

**LEGAL/103697741.v1**