## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS RINK<br>      Plaintiff | : CIVIL ACTION<br>: |
| v. | : JURY TRIAL DEMANDED<br>: |
| NORTHEASTERN EDUCATIONAL<br>INTERMEDIATE UNIT 19,    LOUISE<br>BRZUCHALSKI, ROBERT    SCHWARTZ,<br>JOSEPH MURACCO, RICK BARONE,<br>THOMAS CERRA, CY DOUAIHY, ERIC<br>EMMERICH, HAROLD EMPETT, KATHLEEN<br>GRANDJEAN, MICHAEL MOULD, ELLEN<br>NIELSEN, CHRISTINE PLONSKI-SEZER<br>      Defendant | : NO. 14-CV-02154<br>:<br>:<br>:<br>:<br>: |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' STATEMENT OF MATERIAL FACTS AND
## COUNTERSTATEMENT OF MATERIAL FACTS

Plaintiff, Thomas Rink ("Rink"), by his attorneys, Weir & Partners LLP, hereby responds to the Statement of Material Facts [Docket No. 52] of Defendants, Northeastern Educational Intermediate Unit 19 ("NEIU"), Louise Brzuchalski, Robert Schwartz, Joseph Muracco, Rick Barone, Thomas Cerra, Cy Douaihy, Eric Emmerich, Harold Empett, Kathleen Grandjean, Michael Mould, Ellen Nielsen and Christine Plonski-Sezer (collectively "Defendants") as follows:

1.    Admitted in part, denied in part. It is admitted that the Pennsylvania Rules of Civil Procedure require a concise statement of material facts. It is denied that Defendants provided a concise statement of material facts. On the contrary, the

1

majority of Defendants "facts" are just self-serving statements on the part of Defendants and illustrate that a determination of credibility is necessary by a fact-finder. Further, many of these paragraphs are irrelevant to Defendants' arguments and are simply included to try and smear Rink's reputation. Rink specifically denies that his allegations have not been supported by evidence.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Denied. Count I of the Complaint is in writing, speaks for itself and any characterizations of such are denied.

8. Denied. Count II of the Complaint is in writing, speaks for itself and any characterizations of such are denied.

9. Denied. Count III of the Complaint is in writing, speaks for itself and any characterizations of such are denied.

10. Denied. Count IV of the Complaint is in writing, speaks for itself and any characterizations of such are denied.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Denied as stated. Rink never had a written contract with the NEIU.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Denied. Rink's testimony in his deposition is based solely on Ms. Brzuchalski's testimony although he was aware she had some involvement in asking questions about Rosetti. *See* Defendants' Exhibit "A" at 28:20-29:1; 29:18-30:4. Rink cannot aver to the truth of the statement and therefore denies the same. *See also* Defendants' Exhibit "G" at 24:19-23.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Denied as stated. Rink testified he was not aware of any other connection between Rosetti and Louis Brzuchalski, Tom Cerra, Kathy Grandjean and Eric Emmerich other than they worked together at the NEIU.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted. By way of further response, Rink also testified that he had told the investigators and made a public statement as part of the investigation that the Board allowed Rosetti to run wild and the Board was angry that they were the ones being blamed for Rosetti's malfeasance. *See* Defendants' Exhibit "A" at 139:20-141:2; 245:12-20 and 246:8-22; *see also* Plaintiff's Exhibit "1"[1] at 34:1-35:5.

35. Admitted.

36. Admitted.

37. Admitted.

---

[1] A true and correct copy of the deposition transcript of Michelle Olshefski, Esquire taken on June 30, 2015 is attached hereto as Plaintiff's Exhibit "1".

38. Denied as stated. Rink testified that Clarence Lamanna would report conversations that took place at the executive sessions "a lot of the time". Defendants' Exhibit "A" at 86:20-24.

39. Admitted. By way of further response, Rink testified that Brian T. Kelly Associates and Bob Schwartz, Louise Brzuchalski and Joe Muracco were having contact outside the NEIU right after the audit had begun which is not typical. Defendants' Exhibit "A" at 93:16-98:14.

40. Admitted.

41. It is admitted that the Finance Committee met with the auditors in November of 2012.

42. It is admitted that is what Mr. Kelly stated. It is denied that the books were unauditable. By way of further response, Mr. Kelly was able to audit the books and express the opinion that the financial statements "present fairly, in all material respects, the respective financial position of the government activities, the business type activity, each major fund and the aggregate remaining fund information of the Northeastern Educational Intermediate Unit as of June 30, 2012, and the respective changes in financial position and cash flows, where applicable, and the respective budgetary comparison for the General Fund, thereof for the year then ended in conformity with accounting principles generally accepted in the

United States of America." *See* Plaintiff's Exhibit "2" at p.6; Exhibit "1" to Defendants' Exhibit "C".

43. Denied as stated. This averment does not accurately summarize Rink's testimony.

44. Denied as stated. The NEIU was not going to lose $360,000 in funding; the funds were still available to the NEIU they simply could not be classified as indirect costs. There was no reduction in state funding. By way of further response, other business managers of intermediate units handled indirect costs the same way as Tom Rink. Defendants' Exhibit "D" at 45:24-47:17.

45. Denied. Rink testified that Rosetti was not discussed during the meeting "while [he] was there" and that he was told to leave during the meeting. Defendants' Exhibit "A" at 134:3-12; 135:25-4. Rink further testified that "it was around about that time when Clarence told me that I'm going to be the last---. He says, it looks like I'm going to be the last casualty of Fred Rosetti." Defendants' Exhibit "A" at 136:5-12.

46. Admitted.

47. Admitted. By way of further response, Rink also testified that he had told the investigators and made a public statement as part of the investigation that the Board allowed Rosetti to run wild and the Board was angry that they were the ones being blamed for Rosetti's malfeasance. *See* Defendants' Exhibit "A" at

139:20-141:2; 245:12-20; *see also* Plaintiff's Exhibit "1" at 34:1-35:5.  Rink further testified that it was only after his participation in the Rosetti investigation that suddenly the Board had an issue with his competence and that ultimately he lost his job as a result. *See* Counterstatement of Material Facts.

48.  Denied. *See* Response to Paragraph 47.

49.  Admitted.

50.  Admitted.

51.  Admitted.  By way of further response, Lamanna told Rink this after the Board had been trying to find a reason to terminate him. *See* Defendants' Exhibit "A" at 143:3-144:16; 149:18-150:3.

52.  Admitted.

53.  Admitted.

54.  Denied.  Rink testified that he was not aware of any specific emails where Board member directed someone at the Kelly firm to find fault in his practices. *Id.* at 176:22-179:34.  This does not mean there is no evidence that the Board members tried to influence the Kelly firm's audit findings, or that the Board members did not try to influence the Kelly firm. *See* Rink's Counterstatement of Material Facts.

55.  Admitted.

56.  Admitted.

57. Admitted.

58. Admitted.

59. Admitted.

60. Admitted.

61. Admitted.

62. Admitted.

63. Admitted.

64. Admitted.

65. Admitted. By way of further response, Louise Brzuchalski wanted to terminate Rink not because she wanted to protect Rosetti but because she and the Board as a whole was embarrassed by the statements made by him about the Board. *See* Defendants' Exhibit "A" at 139:20-141:2; 245:12-20; *see also* Plaintiff's Exhibit "1" at 34:1-35:5.

66. Admitted.

67. Denied as stated. It was a June 27, 2014 letter from the solicitor that he received on June 30, 2014. *See Id.* at 273:16-274:12.

68. Admitted. By way of further response, Rink was already not working at the NEIU prior to the hearing.

69.     It is admitted Rink testified to such at p. 276 not 76.  By way of further response, Rink was involved in the investigation in ways that were not public, but the Board was aware.  *See* Rink's Counterstatement of Material Facts.

70.     It is admitted that Tom Rink does not know specific meetings; however, he believes there was a meeting.  *See* Defendants' Exhibit "A" at 70:17-73:1; 77:22-79:18 and Rink's Counterstatement of Material Facts.

71.     Admitted.

72.     Admitted.

73.     Admitted.

74.     Admitted.

75.     Denied as stated. Dr. Lamanna testified that the oversight committee was formed to keep the Board actively informed. Defendants' Exhibit "B" at 63:7-10.

76.     Admitted.

77.     Admitted.

78.     Denied as stated. Dr. Lamanna testified that he believed the "independent third party" was recommended to determine if business practices were appropriate and cannot remember if he was also going to comment on whether to retain Rink. *Id.* at 92-96.

79.     Admitted.

80.    Denied.  Shovlin meet with the finance committee in May of 2014. *See* Exhibit "4" to Defendants' Exhibit "E".

81.    Denied. The report is in writing and speaks for itself.  By way of further response, in the cited testimony Dr. Lamanna stated it was a "bad report" and not that it was "very bad" or that it regarded Rink.  *Id.* at 105.  By way of further response, Shovlin's report failed to properly assess the current state of the Business Department of the NEIU over the past 2 years since it failed to recognize that Rink had fully resolved all the issues identified in the July 2013 corrective action plan by the time he was terminated.  *See* Plaintiff's Exhibit "2"[2] at p.9-10.

82.    Admitted.

83.    Admitted.

84.    Admitted.

85.    It is admitted this is Dr. Lamanna's testimony.[3]

86.    Admitted.

87.    Admitted.

88.    Admitted.

---

[2] A true and correct copy of the Expert Report of Stephen J. Scherf, CPA/ABV, CVA, CFE dated November 12, 2015 is attached hereto as Plaintiff's Exhibit "2," and incorporated herein.

[3] RRink requested the tape for the board meeting from Defendants to verify whether it was a motion to non-renew or terminate; however, the tapes of all the board meetings were blank.  Defendants have been unable to explain why the tapes were blank.

89.     Admitted.

90.     It is admitted that this is what Mr. Kelly testified.[4]

91.     It is admitted that this is what Mr. Kelly testified their role to be.

92.     It is admitted that this is what Mr. Kelly testified.

93.     It is admitted that this is what Mr. Kelly testified.

94.     It is admitted that this is what Mr. Kelly testified.

95.     It is admitted that this is what Mr. Kelly testified, although Mr. Kelly did not testify to such on the cited page.

96.     It is admitted that this is what Mr. Kelly testified.

97.     It is admitted that this is what Mr. Kelly testified. By way of further response, this was a difference in professional judgment between Brian T. Kelly & Associates and the former auditors. *See* Plaintiff's Exhibit "2" at p.7.

98.     It is admitted that this is what Mr. Kelly testified.

99.     Denied as stated. The total audit bill was $66,000 not $63,000.

100.    Denied. This is what Mr. Kelly told the finance committee. It is further specifically denied that this is a true statement. By way of further response, Kelly was able to audit the books and express the opinion that the financial statements "present fairly, in all material respects, the respective financial position

---

[4] As many of these facts are simply assertions of what people testified, Rink will admit that the averments accurately characterize the testimony; however, Rink does not admit to the veracity of any of the deponent's testimony.

of the government activities, the business type activity, each major fund and the aggregate remaining fund information of the Northeastern Educational Intermediate Unit as of June 30, 2012, and the respective changes in financial position and cash flows, where applicable, and the respective budgetary comparison for the General Fund, thereof for the year then ended in conformity with accounting principles generally accepted in the United States of America." *See* Plaintiff's Exhibit "2" at p.6; Exhibit "1" to Defendants' Exhibit "C".

101. Admitted.

102. Admitted.

103. It is admitted that this is what Mr. Kelly testified.[5]

104. It is admitted that this is what Mr. Kelly testified.

105. It is admitted that this is what Mr. Kelly testified.

106. It is admitted that this is what Mr. Kelly testified.

107. Denied. Kelly testified that he had no private meetings with the Board members other than what he already testified to. Defendants' Exhibit "C" at 75:19-76:2. By way of further response, Kelly testified earlier in the deposition that he was asked for input as to whether Rink should be terminated over the course of the audits and not a specific meeting. *Id.* at 61:20-62:6.

---

[5] While the supporting citations for Paragraphs 103 through 122 incorrectly refer to Exhibit "2" to the deposition of Brian Kelly, it is clear that Defendants meant the deposition transcript of Brian Kelly, *i.e.* Defendants' Exhibit "C".

108. It is admitted that this is what Mr. Kelly testified.

109. Denied. Mr. Kelly does not testify that the additional work was required because of the errors of the Plaintiff. Further, the additional work amounted to $45,000 not $42,000.

110. Denied. As Steve Scherf testified in his expert report "many of the June 30, 2012 adjusting entries were the result of reclassifications, adjusting the balances to reconcile the books to the prior audit and holding the books open, resulting in no firm cutoff, at June 30" as the "previous auditor, exercising professional judgment, allowed the practice of holding the books open while the New Auditor did not". *See* Plaintiff's Exhibit "2" at p.6-7. The adjusting of the entries was not as a result of Rink's actions. It should further be noted that Mr. Kelly is not an expert in this case.

111. Admitted.

112. Denied. The 2012 audit is in writing, speaks for itself and Defendants' characterizations of such are denied. By way of further response, see the Expert Reports of Stephen Scherf, which is attached hereto as Plaintiff's Exhibit "2," and Patrick Sable, which is attached hereto as Plaintiff's Exhibit "3".

113. Admitted.

114. Admitted. By way of further response, the majority of adjusting journal entries were immaterial and/or a difference of professional opinion.

Defendants' Exhibit "E" at 53, Defendants' Exhibit "J" at 17:13-17 and 18:4-13; Exhibit "2" at 6-7.

115. It is admitted that this is what Mr. Kelly testified. By way of further response, Mr. Kelly is not an expert in this case. Additionally, other business managers of intermediate units handled indirect costs the same way as Tom Rink. Defendants' Exhibit "D" at 45:24-47:17.

116. Admitted. By way of further response, the majority of adjusting journal entries were immaterial and/or a difference of professional opinion. Defendants' Exhibit "E" at 53, Defendants' Exhibit "J" at 17:13-17 and 18:4-13; Plaintiff's Exhibit "2" at 6-7.

117. Admitted.

118. It is admitted that this is what Mr. Kelly testified.

119. It is admitted that this is what Mr. Kelly testified.

120. It is admitted that this is what Mr. Kelly testified.

121. It is admitted that this is what Mr. Kelly testified.

122. Admitted.

123. Admitted.

124. It is admitted that this is what Mr. Murray testified.

125. Denied. That is not an accurate characterization of Mr. Murray's testimony.

126. Denied. That is not an accurate characterization of Mr. Murray's testimony. By way of further response, Mr. Murray testified that something of that nature would be outside the scope of the financial statement audit and not that he was never asked. Defendants' Exhibit "D" at 29-30.

127. Admitted in part, denied in part. It is admitted that Mr. Murray did not recall any instances; however, it is denied that this is a fact. By way of further response, Mr. Murray also testified that he was not part of the conversations about calling meetings and scheduling them as that was generally between Mr. Kelly, Doctor Lamanna and the Board Members. *Id.* at 32:8-15.

128. It is admitted this is what Mr. Murray testified. By way of further response, it is denied that the books were "unauditable" as Brian T. Kelly & Associates was able to audit the books. By way of further response, Mr. Murray is not an expert in this case.

129. It is admitted that this is what Mr. Murray testified.

130. It is admitted that this is what Mr. Murray testified. By way of further response, Mr. Murray also indicated that other business managers were calculating indirect costs the same way as Rink. *Id.* at 48:16-22.

131. It is admitted that this is what Mr. Murray testified.

132. It is admitted that this is what Mr. Murray testified.

133. It is admitted that this is what Mr. Murray testified.

134.  It is admitted that this is what Mr. Murray testified.

135.  It is admitted that this is what Mr. Murray testified.

136.  Admitted.

137.  Admitted.

138.  Admitted.

139.  Admitted.

140.  Admitted.

141.  Admitted.

142.  Admitted.

143.  Admitted.

144.  It is admitted that this is what Mr. Shovlin testified.

145.  Denied as stated. Mr. Shovlin did not conduct an audit.

146.  It is admitted that this is what Mr. Shovlin testified.

147.  Admitted in part, denied in part. It is admitted that this is what Mr. Shovlin testified to the averment. Mr. Shovlin is not an expert in the case and whether termination of Mr. Rink's employment is warranted is a legal conclusion. It is further specifically denied, that the Board was warranted and terminating Mr. Rink's employment.

148. It is admitted that this is what Mr. Shovlin testified. By way of further response, Mr. Shovlin is not an expert in this case and his analysis as to a legal conclusion is irrelevant.

149. It is admitted that this is what Mr. Shovlin testified.

150. Denied. Mr. Shovlin only testified as to Bob Schwartz's concerns or frustrations.

151. Denied. Mr. Shovlin only testified as to Bob Schwartz's concerns or frustrations.

152. It is admitted this is what Mr. Shovlin testified.

153. It is admitted that this is what Mr. Shovlin testified. By way of further response, Mr. Shovlin is not an expert in this case and his opinion is irrelevant.

154. It is admitted this is what Mr. Shovlin testified. By way of further response, Mr. Shovlin is not an expert in this case and his analysis as to a legal conclusion is irrelevant.

155. Admitted.

156. Denied as stated. Shovlin testified that he went over these issues with the Finance Committee in a summarized form. Defendants' Exhibit "E" at 61-62.

157. Denied as stated. Shovlin's testimony has to do with his meeting with the Finance Committee and his testimony is that it "could be warranted" as the "maximum penalty". *Id.*

158. Admitted.

159. It is admitted that this is what Mr. Shovlin testified. *See* footnote 3.

160. It is admitted this is what Mr. Shovlin testified. Mr. Shovlin further testified he retrieved the report shortly after handing it out. Defendants' Exhibit "E" at 73. It is denied that the Board was provided with a written copy of the report to keep, review and consider. *See* Defendants' Exhibit "I" at 22:25-23:10; Defendants' Exhibit "K" at 10:22-11:2; Defendants' Exhibit "H" at 47:7-9.

161. Denied as stated. Mr. Shovlin testified that he "made a recommendation that there be a hearing to go over the issues, those seven issues, the result of which could be again; no action, performance improvement plan, suspension, demotion or termination of employment. There was no conclusion reached that night." Defendants' Exhibit "E" at 73:1-21.

162. It is admitted this is what Mr. Shovlin testified.

163. Denied as stated. Mr. Shovlin testified it depended on the timing. By way of further response, Mr. Shovlin is not an expert in this case and his legal conclusion is irrelevant.

164. It is admitted this is what Mr. Shovlin testified. By way of further response, Mr. Shovlin is not an expert in this case and his legal conclusion is irrelevant.

165. It is admitted this is what Mr. Shovlin testified.

166. It is admitted this is what Mr. Shovlin testified. By way of further response, he also testified that members of the Audit & Finance Committee expressed their concerns regarding Rink's performance from the very beginning. *Id.* at 94:19-24.

167. It is admitted this is what Mr. Shovlin testified.

168. It is admitted this is what Mr. Shovlin testified.

169. It is admitted this is what Mr. Shovlin testified.

170. Denied. Mr. Shovlin's deposition testimony speaks for itself and Defendants' characterization of such is denied. By way of further response, it is denied these were "material issues."

171. It is admitted this is what Mr. Shovlin testified. By way of further response, Mr. Shovlin is not an expert in this case and his legal conclusion is irrelevant.

172. Admitted.

173. Admitted.

174. Admitted.

175. It is admitted this is what Ms. Brzuchalski testified.

176. It is admitted this is what Ms. Brzuchalski testified.

177. Denied. This is a legal conclusion to which no response is required.

178. It is admitted this is what Ms. Brzuchalski testified.

179. It is admitted this is what Ms. Brzuchalski testified.

180. It is admitted this is what Ms. Brzuchalski testified.

181. It is admitted this is what Ms. Brzuchalski testified.

182. It is admitted this is what Ms. Brzuchalski testified. It is further denied that this is the first time she attempted to take action against Rink. Indeed, she was attempting to take action right after Rosetti entered his guilty plea. *See* Plaintiff's Exhibit "1" at 43:20-22

183. It is admitted this is what Ms. Brzuchalski testified. It is denied that the statement is true. By way of further response the NEIU has not lost $360,000 in state funding; the funds were still available to the NEIU they simply could not be classified as indirect costs.

184. It is admitted this is what Ms. Brzuchalski testified. By way of further response, Ms. Brzuchalski is not an expert in this case.

185. It is admitted this is what Ms. Brzuchalski testified.

186. It is admitted this is what Ms. Brzuchalski testified. By way of further response, she also stated Rink was good at doing what you told him to do.

187. Admitted in part, denied in part. It is admitted that Ms. Brzuchalski made the motion on May 20, 2014. It is denied that it was a motion to not renew Rink's contract. *See* footnote 3.

188. It is admitted this is what Ms. Brzuchalski testified.

189. It is admitted this is what Ms. Brzuchalski testified.

190. It is admitted this is what Ms. Brzuchalski testified.

191. Admitted.

192. Admitted in part, denied in part. It is admitted that an adjudication and determination was made to terminate Tom Rink after a hearing. Tom Rink is without knowledge as to whether the adjudication was the result of the hearing, or if a decision was already made before the hearing, and therefore denies the same.

193. Admitted.

194. It is admitted this is what Ms. Brzuchalski testified. By way of further response, Ms. Brzuchalski is not an expert in this case.

195. Admitted.

196. Admitted.

197. Admitted.

198. It is admitted that this is what Mr. Schwartz testified.

199. It is admitted that this is what Mr. Schwartz testified.

200. It is admitted that this is what Mr. Schwartz testified.

201. Denied in part, admitted in part. It is denied that Mr. Schwartz testified this was a meeting regarding "Tom's issue". Mr. Schwartz is testifying about a progress report from Kelly in the Fall of 2012. It is admitted that the rest of the averment is what Mr. Schwartz testified.

202. Admitted in part, denied in part. It is admitted the audit report cost more than the initial audit cost. It is denied that it is because the accountants had to do extra work to recreate information from the prior years, or that Tom was responsible for the need to do extra work. As Steve Scherf testified in his expert report "many of the June 30, 2012 adjusting entries were the result of reclassifications, adjusting the balances to reconcile the books to the prior audit and holding the books open, resulting in no firm cutoff, at June 30" as the "previous auditor, exercising professional judgment, allowed the practice of holding the books open while the New Auditor did not". *See* Plaintiff's Exhibit "2" at p.6-7.

203. It is admitted that this is what Mr. Schwartz testified.

204. Admitted.

205. Denied. It is denied that Tom Rink's work was the cause of the withholding of funds. By way of further response, see Rink's Counterstatement of Material Facts.

206. Admitted.

207. It is admitted that this is what Mr. Cerra testified. It is denied that it is in fact true that the "books were a mess."

208. Denied as stated. The averment does not accurately characterize Mr. Cerra's testimony.

209. Admitted.

210. It is admitted this is what Mr. Emmerich testified.

211. It is admitted this is what Mr. Emmerich testified.

212. It is admitted this is what Mr. Emmerich testified.

213. Denied as stated. The averment does not accurately characterize Mr. Emmerich's testimony.

214. It is admitted this is what Mr. Emmerich testified.

215. Admitted.

216. Admitted.

217. Admitted.

218. It is admitted this is what Ms. Grandjean testified.

219. It is admitted this is what Ms. Grandjean testified. By way of further response, it is specifically denied that the Board was not targeting Tom Rink because of Fred Rosetti. *See* Rink's Counterstatement of Material Facts.

220. Admitted.

221. Admitted.

222. Denied as stated. The averment does not accurately characterize Mr. Empett's testimony. It is further specifically denied that this is a fact. By way of further response, Shovlin was hired after Rink was informed that he either needed to take an early retirement package or that the Board was going to bring in an

independent consultant to "point out any mistakes he may have made." *See* Defendants' Exhibit "A" at 218:7-25.

223. It is admitted this is what Mr. Empett testified.

224. Denied as stated. Mr. Empett testified this was the reason he voted to end the relationship with Mr. Rink.

225. It is admitted this is what Mr. Empett testified.

226. Admitted.

227. Admitted.

228. It is admitted this is what Mr. Muracco testified.

229. Denied as stated. The averment does not accurately characterize Mr. Muracco's testimony.

230. Denied. The averment does not accurately characterize Mr. Muracco's testimony.

231. Admitted.

232. Admitted. By way of further response, Mr. Rink's counsel made it clear that Mr. Rink's employment was terminated on June 30, 2014 and the Board no longer had the power to terminate him for cause. *See* Defendants' Exhibit "N".

233. Admitted.

234. Denied. Whether Louise Brzuchalski was the initial whistleblower regarding Rosetti is irrelevant to Rink's claims. By way of further response, *see* Rink's Counterstatement of Material Facts.

235. Denied. By way of further response, *see* Rink's Counterstatement of Material Facts.

236. Admitted.

Counterstatement of Material Facts

Rink hereby asserts the following undisputed material facts[6]:

1.    Rink graduated Wilkes University in May 1979 with a Bachelor's of Science degree majoring in accounting and he received a Master of Business Administration from Wilkes University in May 1986. Defendants' Exhibit "A" at 10:5-14; 11:22-12:2.

2.    Rink is not a Certified Public Accountant. *Id.*

3.    Rink has been working for the NEIU since October of 1981 and in the business office since 1986. *Id.* at 12:6-19.

4.    Rink was conscientious, a hard worker, honest, with the best interest of the NEIU at heart and with no improprieties or wrongdoings, or issues that would call into his question his work conduct. Defendants' Exhibit "B" at 20:13-21:19.

---

[6] It should be noted that Defendants have never filed an Answer to Plaintiff's Amended Complaint, so they have never denied the facts asserted within.

5.      Rink was voted as acting fiscal director in November of 1993 and then made permanent fiscal director in May of 1994. Defendants' Exhibit "A" at 264:9-13.

6.      After that vote by the Board there were no votes to renew, terminate or change Rink's employment prior to the vote in 2014. Defendants' Exhibit "A" at 264:16-20.

7.      There was never a written contract governing Rink's employment with the NEIU. *Id.* at 16:15-24.

8.      Rink believed his term of employment was perpetual unless he committed some great crime because that how things were handled at the NEIU. Defendants' Exhibit "A" at 265:10-266:2.

9.      Rink did not, and could not, negotiate his salary or terms of employment. *Id.* at 17:4-16.

10.     The Board voted each year on how much to raise Rink's salary. *Id.*

11.     Act 93 employees had their agreements renewed every three to five years.

12.     Brian Foster was the original auditing firm of the NEIU when Rink was appointed fiscal director in 1993. *Id.* at 19:8-15.

13.     Mr. Foster never raised any issues regarding Rink's accounting methods. *Id.* at 19:16-24.

14.   Bonita & Rainey, CPAs were the auditors for the NEIU from 2001 until June of 2012. *Id.* at 19:6-8.

15.   During the eleven year time period when Bonita & Rainey, CPAs were the auditors, with the exception of one of the first year's audits[7], each of the audits did not contain any findings and there were no management letters issued by the auditor communicating constructive services in connection with Rink's duties as Fiscal Director/Business Administrator of the NEIU. Defendants' Exhibit "A" at 19:19-24:3; Defendants' Exhibit "B" at 33:19-34:21; Defendants' Exhibit "F" at 100:24-101:5; Exhibit "G" at 34:8-11.

16.   Bonita & Rainey, CPAs had their work peer reviewed by Maulo & Company, Ltd. and in both 2009 and 2012; the Bonita & Rainey firm passed its peer reviews. A true and correct copy of the peer reviews are attached hereto as Plaintiff's Exhibit "4".

17.   In June of 2010, Fred Rosetti ("Rosetti"), the Executive Director of the NEIU, retired with a very lucrative retirement package in accordance with his employment contract. Defendants' Exhibit "F" at 44.

18.   Following his retirement, Rosetti's practices came under scrutiny and an investigation into Rosetti and the NEIU's supervision of him was launched by

---

[7] There was one finding from Bonita & Rainey, CPAs that the NEIU needed to separate the duties of billing and managing the checkbook for two of the programs. Defendants' Exhibit "A" at 19:19-22:10.

the Pennsylvania Department of the Auditor General ("Auditor General"), the U.S. Department of Education and the Federal Bureau of Investigation ("FBI"). *See* Plaintiff's Exhibit "1" at 12.

19.   On Good Friday, April 22, 2011, a representative from the U.S. Department of Education and the FBI appeared at Rink's home and served him with a subpoena to appear before the Assistant U.S. Attorney on May 18, 2011. *See* Plaintiff's Exhibit "1" at 15.

20.   Defendants were aware of the visit as after receiving the subpoena, Plaintiff called Dr. Clarence Lamanna ("Lamanna"), the new Executive Director of the NEIU, and told him of the April 22, 2011 visit. Defendants' Exhibit "B" at 41:14-18; *see also* Defendants' Exhibit "I" at 22:10-17.

21.   On May 18, 2011, Plaintiff went to the U.S. Attorney's office in Scranton, PA where he met with a U.S. Attorney, a representative from the Auditor General's office and two FBI agents regarding a criminal investigation being conducted by the FBI of Fred Rosetti and his activities while employed by the NEIU. Exhibit "2" of Plaintiff's Exhibit "1" at ¶2.

22.    Rink was a cooperating witness who was tremendously helpful in advancing the investigation. Plaintiff's Exhibit "1" at 35:13-17; *see also* Plaintiff's Exhibit "5" at ¶3.[8]

23.    Michelle Olshefski, Esquire of the Department of Justice as Assistant US Attorney had a conversation with Jeff Tucker, Esquire, the Solicitor for the NEIU, in June of 2010, where Ms. Olshefski told him that the NEIU should not take any adverse action against Mr. Rink because that would be interfering with a Federal investigation. Plaintiff's Exhibit "1" at 17-18; *See also* Plaintiff's Exhibit 2" to Exhibit "1".

24.    Ms. Olshefski learned from several people on the Board that "the NEIU was blaming Mr. Rink." Plaintiff's Exhibit "1" at 21-22.

25.    According to Ms. Olshefski the Board blamed Tom because "the NEIU was being exposed publicly and their Executive Director was the one who was being investigated.   And they stamped and signed everything that their Executive Director did …Who they wanted to hold accountable I don't know, but the sense was they were trying to hold others criminally responsible or accountable for the actions of one man." Plaintiff's Exhibit "1" at 34:1-35:5; *see also* Plaintiff's Exhibit "5" at ¶4.

---

[8]A true and correct copy of the Affidavit of Joseph O'Brien, Esquire is attached hereto as Plaintiff's Exhibit "5," and incorporated herein.

26. On February 21, 2012, Rosetti was indicted for financial improprieties arising out of the performance of his job.

27. In October of 2012, Rosetti plead guilty on theft and mail fraud charges and admitted to allegations of misusing taxpayer money.

28. In the fall of 2012, after Rosetti entered his guilty plea but before he was sentenced, Ms. Olshefski met with Board members and told them that Mr. Rink was not part of Rosetti's scheme after the Board members brought the topic of Tom Rink up. Plaintiff's Exhibit "1" at 27-29; Exhibit "2" to Plaintiff's Exhibit "1" at ¶4; Defendants' Exhibit "B" at 56:16-57:23.

29. There was a general attitude amongst the Board where they seemed to feel personally embarrassed, even though they might not have been on the Board when Rosetti was doing what he did. Defendants' Exhibit "A" at 139:20-141:2; 246:8-22.

30. Rink read an impact statement at the sentencing trial for Rosetti that was not complimentary of the Board and caused the Board further embarrassment. Defendants' Exhibit "A" at 245:12-20.

31. The Board pressured NEIU's current auditor, Bonita & Rainey, CPAs to step aside as auditor and forego the last year of his contract and Brian Kelley and Associates (the "Kelly Firm") was selected to replace Tom Rainey in June of 2012. Defendants' Exhibit "G" at 35:12-22.

32.     Bonita & Rainey, CPAs were removed because the Board felt they didn't catch Rosetti situation.  Defendants' Exhibit "B" at 67:12-20.

33.     Jeff Tucker, Esquire was removed because of how the Board felt he handled the Rosetti situation.  Defendants' Exhibit "B" at 76:4-77:9; Defendants' Exhibit "G" at 35:23-37:12.

34.     The NEIU's Board Members also started discussing having Rink terminated around this time.  Plaintiff's Exhibit "1" at 21-22; Exhibit "A" at 68:25-73:12.

35.     It was always couched to the NEIU Board that "Tom willingly went out and sought to be the whistle blower."  Defendants' Exhibit "G" at 17:15-20.

36.     Clarence Lamanna told the board members on the Finance Committee "you've really got to watch what you're doing because Tom was a whistle blower. Tom was involved with the case. If you do anything with Tom to replace him, you know, you were already told by Michelle Olshefski you can't fire Tom because of his attachment to the case." Defendants' Exhibit "G" at 18:18-24.

37.     Clarence Lamanna brought up the fact that Rink was protected under the Whistle Blower Act to the Board's attention easily ten times, possibly up to thirty times.  Defendants' Exhibit "G" at 18:25-19:14.

38. Bob Schwartz, Louise Brzuchalski and Joe Muracco started having discussions with the Kelly Firm right after the audit began which is not typical. Defendants' Exhibit "A" at 93:16-98:14.

39. The Kelly Firm made a lot of adjusting journal entries a majority of which were immaterial. Defendants' Exhibit "E" at 53, Defendants' Exhibit "J" at 17:13-17; 18:4-13.

40. It is not unusual for an auditor to propose numerous adjustments, especially to reclassify amounts between the various funds and contracts. Plaintiff's Exhibit "2" at 8.

41. In the 2011-12 Audit Report prepared by the Kelly Firm there are 13 separate written findings and questioned costs identified by the auditors. *See* Exhibit "1" to Defendants' Exhibit "C".

42. The lack of findings on the part of the Bonita & Rainey firm versus the Kelly Firm represents of nothing more than a difference in professional judgment. *See* Plaintiff's Exhibit "2" at 7.

43. Several of these written findings and questioned costs were minor in nature such as Finding 12-7 (Collection and Remittance of Sales Tax); Finding 12-8 (Security of Check Stock and Signature Stamp) and Finding 12-9 (Cutoff Procedures) and could have been identified as verbal findings and resolved quickly. Plaintiff's Exhibit "3" at 2.

44.    Dr. Lamanna was surprised that the Kelly Firm did not have courtesy of reviewing findings with Executive Director and Business Manager prior to presenting to the Finance committee. Defendants' Exhibit "B" at 72:18-73.

45.    Providing Management, including Tom Rink, a fair opportunity to take corrective action is reasonable and customary before putting a finding in writing. Plaintiff's Exhibit "3" at 1.

46.    Brian T. Kelly, CPA & Associates issued a Constructive Services Report to the Board of Directors of NEIU 19 regarding internal control items of observation that occurred while conducting their 2011-12 Audit. *See* Exhibit "1" to Defendants' Exhibit "C".

47.    When issuing a Constructive Services Report it is usual and customary to also include Management's Response pertaining to the constructive service recommendations. Plaintiff's Exhibit "3" at 2.

48.    In this particular case, there were no Management Responses included with the Constructive Services Report to the NEIU Board which is a sign that Brian T. Kelly, CPA & Associates did not want an explanatory response from Management that would conflict with and deemphasize the Constructive Services comments. Plaintiff's Exhibit "3" at 2.

49.    The June 30, 2012 audit report was not presented to the NEIU until May 2013 and subsequent to the presentation of the audit results, Dr. Lamanna,

presented Rink with a corrective action plan ("Corrective Action Plan"), which mirrored the 13 findings of the June 30, 2012 audit. Defendants' Exhibit "B" at 140:7-145:21.

50.     Rink had made significant progress on his Corrective Action Plan. *See* Plaintiff's Exhibit "2" at 9.

51.     Dr. Lamanna, the executive director of the NEIU at the time, expected that Rink would continue to be employed if he made corrective action over the course of 2014. Defendants' Exhibit "B" at 32.

52.     Rink undertook the steps necessary to comply with the corrective action plan that Dr. Lamanna had presented Rink. Exhibit "B" at 147:11-148:4.

53.     Out of these 13 written finding in the 2011-2012 Audit Report, only five remained outstanding at the time of the 2012-13. Defendants' Exhibit "E" at 61.

54.     There was significantly less adjusting journal entries for the 2013 year. Exhibit "C" at 94:11-18.

55.     There were no findings in the 2013-2014 Audit. Defendant's Exhibit "C" at 57:23-58:2. A true and correct copy of the NEIU's financial statements for 2014 were attached to Brian Kelly's deposition as Kelly Exhibit No. 3. *See also* Defendants' Exhibit "C" at 57:13-22.

56. Tom Rink was the Fiscal Director for the NEIU for approximately eleven of the twelve months for the 2014 financial statements. Defendants' Exhibit "C" at 64:6-15.

57. In February of 2014, John Audi, Esquire, the solicitor for the NEIU called Joseph O'Brien, Esquire, Rink's attorney, to convince Rink to take an early retirement package. *See* Plaintiff's Exhibit "5" at ¶¶5-6; *see also* Defendants'

58. Shovlin was engaged in the March of 2014. Defendants' Exhibit "E" at 16; Exhibit "1" to Defendants' Exhibit "E".

59. Shovlin never interviewed anyone associated with the Rainey Firm or considered Rink's past performance before 2012. Defendants' Exhibit "E" at 30.

60. Shovlin did not perform any evaluation to determine the specific progress and the issues raised in the July 2013 corrective action plan, which is also known as the performance improvement plan. *See* Defendants' Exhibit "3" to Defendants' Exhibit "E"; *See* Plaintiff's Exhibit "2" at 9.

61. Shovlin did not analyze what occurred from a financial standpoint during the June 30, 2014 fiscal year. *See* Exhibit "3" and Exhibit "9" to Defendants' Exhibit "E", *See* Plaintiff's Exhibit "2" at 9.

62. Shovlin's engagement letter authorized him to engage a Certified Public Accountant to assist him in performing a review to determine if any kind of

corrective action or discipline is warranted, yet he never hired one. Exhibit "2" at 8-9; Exhibit "1" to Defendants' Exhibit "E".

63.     Shovlin stated Rink was insubordinate for filing an Annual Financial Report ("AFR") despite the fact that Dr. Lamanna instructed him to file the AFR. Defendants' Exhibit "B" at 106:14-107:2.

64.     Tom Rink was not invited to the May 15th meeting with Financial Committee where Shovlin's findings were discussed. Defendants' Exhibit "E" at 62.

65.     Shovlin did not provide the Board or Finance Committee with a copy of his written report. Defendants' Exhibit "I" at 22:25-23:10; Defendants' Exhibit "K" at 10:22-11:2; Defendants' Exhibit "H" at 47:7-9.

66.     On May 20, 2014, the Board had an executive session where they discussed Shovlin's report and Rink was not invited to the executive session.

67.     Right after the executive session, on May 20, 2014, the Board voted to terminate Plaintiff's employment as Fiscal Director/Business Administrator effective June 30, 2014.

68.     The twelve Board Members each personally participated in the decisions to terminate Plaintiff on May 20, 2014.

69. By letter dated May 21, 2014, Lamanna informed Plaintiff that his employment would not be renewed and that his employment with NEIU would end at the conclusion of business on June 30, 2014.

70. At the time of the termination of Rink, he had successfully completed his July 2013 corrective action plan as demonstrated by the fact that the June 30, 2014 audit contained no findings and there was no Management Letter issued by the Kelly Firm.

71. On September 23, 2014, there was a motion by Mr. Muracco, seconded by Mrs. Brzuchalski, to adopt and pass the Adjudication dismissing Thomas Rink for neglect of duty at the conclusion of the June 30, 2014 work day. A true and correct copy of the September 23, 2014 meeting minutes are attached hereto as Plaintiff's Exhibit "6".

72. On October 2, 2014, there was a motion by Mr. Muracco, seconded by Mrs. Brzuchalski, to adopt and pass the Adjudication dismissing Thomas Rink for neglect of duty at the conclusion of the June 20, 2014 work day. A true and correct copy of the October 2, 2014 meeting minutes are attached hereto as Plaintiff's Exhibit "7".

73. The NEIU Board voted on September 23, 2014 and then again October 2, 2014 on the advice of counsel because of something procedurally. Defendants' Exhibit "G" at 65:12-14

74.     After Rink was terminated Schwartz showed a lack of interest in the finances of the NEIU, doesn't know about 2014 report or whether 2013 AFR was amended despite still being president until June of 2015. Defendants' Exhibit "G" at 54:23-2; 59:18-22.

75.     Likewise, Schwartz did not know whether there had ever been any previous audit findings in the seventeen years or so that Tom Rink had served as fiscal director.  Defendants' Exhibit "G" at 67:15-20

76.     The Finance Committee stopped meeting after Rink's termination. Defendants' Exhibit "K" at 7: 14-20.

WEIR & PARTNERS LLP

By:/s/ Brett A. Datto
      BRETT A. DATTO, ESQUIRE
      LAUREN N. SCHWIMMER, ESQ.
      Suite 500, The Widener Building
      1339 Chestnut Street
      Philadelphia, PA  19107
      Brett.datto@weirpartners.com
      (215) 665-8181
      *Counsel for Plaintiff*

Dated:  March 2, 2016